IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| MARTIN JAMES SHARPE,  )  <br>aka JAMES MARTIN SHARPE,  )  <br>aka JAMES SHARPE,  )  <br>                                                                )  <br>                         Petitioner,         )  <br>                                                                )  <br>       vs.                                                  )  <br>                                                                )  <br>WARDEN MAUNEY, NORTHSIDE   )  <br>CORRECTIONAL INSTITUTION,     )  <br>                                                                )  <br>                         Respondent.       )  <br>_____ ) | C/A No. 4:07-1463-GRA-TER <br><br><br><br><br><br>REPORT AND RECOMMENDATION |

Petitioner, Martin James Sharpe ("Petitioner/Sharpe"), is an inmate in the custody of the South Carolina Department of Corrections (SCDC). Petitioner, appearing *pro se*, filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254[1] on May 25, 2007. Respondent filed a motion for summary judgment on July 23, 2007, along with a return and supporting memorandum. The undersigned issued an order filed July 26, 2007, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the motion for summary judgment procedure and the possible consequences if he failed to file a response. Petitioner filed a response on July 30, 2007.

**I.  PROCEDURAL HISTORY**

The procedural history as set forth by the Respondent in his memorandum has not been

---

[1] This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, DSC.  Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

seriously disputed by the Petitioner in his response. Therefore, the undersigned will set out the undisputed procedural history as set forth by the Respondent.

Petitioner is presently confined to McCormick Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment of the Clerk of Court for Lexington County. Representing four separate incidents in which Petitioner attacked women, the Lexington County Grand Jury at the February 1999 term indicted Petitioner for first degree Burglary ("Burglary 1st") (99-GS-32-0822) {PCR App. 216-18}, Burglary 1st (99-GS-32-0823) {PCR App. 220-22}, Criminal Sexual Conduct in the first degree ("CSC 1st") (99-GS-32-0824) {PCR App. 214-15}, Burglary 1st (99-GS-32-0827) {PCR App. 210-12}, CSC 1st (99-GS-32-0828) {PCR App. 208-09}, Burglary 1st (99-GS-32-0832) {PCR App.206-07}, Assault and Battery of a High and Aggravated Nature ("ABHAN") (99-GS-32-0834) {PCR App. 202-04}, Armed Robbery (99-GS-32-0837) {PCR App. 200-01}, and CSC 1st (99-GS-32-0838) {PCR App. 196-97}.

On April 21, 1999, Petitioner entered guilty pleas to the above-listed offenses before the Honorable Marc Westbrook. Petitioner was represented at the plea hearing by Assistant Public Defender Hervery Young; the State was represented by Deputy Solicitor Dayton Riddle. At the hearing, the solicitor put on the record that the defense and prosecution had agreed that Petitioner would be sentenced to a term of years, but that there was no agreement as to the amount of years. Moreover, in return for the plea, the solicitor was dropping the following charges: kidnapping (99-GS-32-825), ABHAN (99-GS- 32-826), kidnapping (99-GS-32-829), ABHAN (99-GS-32-830), ABHAN (99-GS-32-831), kidnapping (99-GS-32-833), kidnapping (99-GS-32-835), and possession of a knife during commission of a violent crime (99-GS-32-836). {PCR App. 43-44}.

Judge Westbrook accepted the pleas and sentenced Petitioner to thirty (30) years on each of

the Burglary 1st, CSC 1st, and armed robbery charges, and ten (10) years on the ABHAN charge. However, while the sentences for the various crimes within each incident were concurrent to one another, the sentences for each incident were consecutive to one another. Thus, Petitioner received an active sentence of one hundred and twenty (120) years. Judge Westbrook also revoked Petitioner's probation from prior offenses and ran that concurrently to the sentences for the four incidents. {PCR App. 54-57; 199; 205; 213; 219}.

Petitioner's counsel orally moved for reconsideration, arguing that the Judge's sentence was so long as to be in effect a life sentence, and the plea agreement had removed a life sentence as a possibility. The Judge denied the motion, responding that the agreement was only for a term of years, but there was no agreement as to the amount of years. {PCR App. 57-60}.

Petitioner subsequently filed a written motion for reconsideration of sentence. {PCR App. 65}. A hearing was held on the motion to reconsider on June 23, 1999. {PCR App. 3 62}. At the hearing, the Judge retained the sentence amounts for each crime, but adjusted the manner in which they ran as follows in order to reduce the active sentence to sixty (60) years: the thirty (30) years sentences for Indictments 99-GS-32-838, and -837 ran concurrently with the thirty (30) years sentence for 99-GS-32-822, but the thirty (30) year sentence on Indictment 99-GS-32-0823 ran consecutive with 99-GS-32-822, and the thirty (30) year sentences on -824, -827, -828, and -832, as well as the ten (10) year sentence on -834, ran concurrently with -0823. Judge Westbrook also made the ten (10) years sentence from the probation violations consecutive to the sixty (60) years aggregate sentence on the other crimes. {PCR App. 89-94}. A written order to this effect was signed by Judge Westbrook on June 24, 1999. {PCR App. 96}.

A timely notice of appeal was filed and served with the South Carolina Court of Appeals.

{PCR App. 101}. Assistant Appellate Defender Katherine Carruth Link of the South Carolina Office of Appellate Defense was appointed to represent Petitioner in his direct appeal. On January 2, 2001, Link filed a "no merit" Anders Final Brief of Appellant and Petition to be Relieved as Counsel, in which she raised the following issue on behalf of Appellant:

> Was appellant's plea knowing and voluntary, where he pleaded guilty with the understanding that he would not receive a life sentence but the sentence imposed by the court was tantamount to a life sentence.

On April 23, 2001, the state court of appeals issued an opinion dismissing the appeal after Anders review. State v. Sharpe, 2001-UP-230 (S.C. Ct. App. filed 4/23/01). The Remittitur was sent down on May 24, 2001.

Petitioner filed a *pro se* Amended Application for Post-Conviction Relief on April 17, 2002 (2002-CP-32-1380), in which he asserted the following issues:

> 1.  Applicant's plea was not knowing and voluntary where he pleaded guilty on advise of Counsel with the understanding that he would not receive a life sentence, but the sentence imposed equaled a life sentence.
>
> 2.  Ineffective assistance of Counsel.

{PCR App. 104}. The State filed a Return dated March 17, 2003. {PCR App. 117}.

An evidentiary hearing in Petitioner's APCR was held on June 12, 2004, before the Honorable William P. Keesley. {PCR App. 122}. Petitioner was present and represented by John McCauley, Esquire. Petitioner called himself to testify; the State called trial counsel Young and Deputy Solicitor Dayton Riddle. On July 27, 2004, Judge Keesley filed an Order of Dismissal rejecting Petitioner's claims. {PCR App. 184}.

A timely notice of appeal was filed with the South Carolina Supreme Court from Judge

4

Keesley's Order of Dismissal. Assistant Appellate Defender Wanda P. Hagler of the South Carolina Office of Appellate Defense was appointed to represent Petitioner in his PCR appeal. On January 21, 2005, Hagler filed a Petition for Writ of Certiorari, in which she raised the following issue on behalf of Petitioner:

> 1. Did trial counsel err in failing to move to withdraw petitioner's guilty pleas because petitioner did not receive the benefit of the plea bargain since there was no meting of the minds between the solicitor and defense defense [sic] counsel regarding the meaning of a life sentence under the plea agreement?
>
> 2. Was trial counsel ineffective in failing to explain fully sentencing consequences in the case?

The State filed a Return to the Petition for Writ of Certiorari dated May 6, 2005.

On June 7, 2006, the South Carolina Supreme Court issued an Order in which it denied the certiorari petition, and the Remittitur was sent down on June 26, 2006.

## II. GROUNDS FOR RELIEF

In his *pro se* Petition for Writ of Habeas Corpus, Petitioner raises the following grounds for relief, quoted verbatim:

> GROUND ONE:     Plea of guilty which was unlawfully induced and was not made voluntary or knowingly.
>
> SUPPORTING FACTS:     Plea was based on representation by defense counsel that a plea agreement was reached where the result of that plea would be in a term of years. That said term would not be the equivalent of a life sentence.
>
> GROUND TWO:     Ineffective assistance of counsel.
>
> SUPPORTING FACTS:     Counsel was ineffective where he misrepresented

5

>     what the actual plea agreement was. Counsel informed petitioner that by the plea agreement his guilty plea would result in a term of years but that said term would not be the equivalent of a life sentence.

(Petition).

### III.  SUMMARY JUDGMENT

On July 23, 2007, the Respondent filed a return and memorandum of law in support of his motion for summary judgment. Petitioner filed a response.

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both

parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial.  See Fed. R. Civ. P. 56(c).  Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact."  In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof.  Celotex, 477 U.S. at 322-323.

### IV.  STANDARD OF REVIEW

Since Sharpe filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended.  Lindh v. Murphy, 117 S. Ct. 2059 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir. 1998); Green v. French, 143 F.3d 865 (4th Cir. 1998).  That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To a large extent, the amendment of § 2254 shifts the focus of habeas review to the state court application of Supreme Court law.  See O'Brien v. DuBois, 145 F.3d 16 (1st Cir. 1998) ("the AEDPA amendments to section 2254 exalt the role that a state court's decision plays in a habeas

proceeding by specifically directing the habeas court to make the state court decision the cynosure of federal review."). Further, the facts determined by the state court to which this standard is applied are presumed to be correct unless rebutted by the Petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The United States Supreme Court has addressed procedure under § 2254(d). See Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000). In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1). Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521.

The AEDPA became effective on April 24, 1996. The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts.

## V.   DISCUSSION AS TO STATUTE OF LIMITATIONS

The Respondent asserts that the Petitioner's claims must be dismissed as untimely. Specifically, Respondent asserts that the Petitioner's federal habeas petition should be dismissed because it was not timely filed under the one-year statute of limitations created by the AEDPA. Respondent argues as follows, quoted verbatim:

> Petitioner's conviction was finalized by the conclusion of direct review on July 22, 2001, or ninety (90) days after April 23, 2001, the date the South Carolina Court of Appeals issued the decision dismissing the appeal from petitioner's convictions and sentences. . . .
>
> Petitioner did not file his APCR until April 17, 2002, so two hundred sixty-nine days of non-tolled time accrued between the disposition of his direct appeal and the filing of the APCR. The period of limitations was tolled during the pendency of the APCR until no later than June 26, 2006, when the South Carolina Supreme Court issued the

remittitur from its Order denying certiorari review on the APCR order of Dismissal.
. . .

Petitioner's delivery date is May 18, 2007, so an additional three hundred and twenty-six (326) days of non-tolled time accrued after the disposition of the APCR on June 26, 2006. When the pre- and post- APCR time periods are added, there were at least five hundred and ninety-five (595) days of non-tolled time since Petitioner's period of limitations began to run on July 22, 2001. Therefore, the present Petition for Writ of habeas corpus is clearly time-barred and should be denied and dismissed.

The applicable law is as follows: The AEDPA became effective on April 24, 1996. The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts. One of those changes was the amendment of 28 U.S.C. § 2244 to establish a one-year statute of limitations for filing habeas petitions.[2] Subsection (d) of the statute now reads:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the <u>latest</u> of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme

---

[2] Prior to this amendment there was no statute of limitations. Habeas Rule 9(a) allowed dismissal only where the state could show it had been prejudiced by a delay in filing. <u>Duarte v. Hershberger</u>, 947 F. Supp. 146, 148, n.2 (D.N.J. 1996).

9

> Court and made retroactively applicable to cases on collateral review; or
>
> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2)  The time during which a "properly filed" application for State post- conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. (Emphasis added).

As stated under the procedural history, the South Carolina Court of Appeals issued an opinion dismissing the appeal on April 23, 2001. Petitioner's conviction became final on July 22, 2001, ninety (90) days after April 23, 2001. Petitioner filed his pro se application for PCR on April 17, 2002. Therefore, two-hundred and sixty-nine (269) days of non-tolled time passed between the conclusion of direct review and the filing of the PCR application. The period of limitations for filing his federal habeas corpus action was tolled during the pendency of the PCR.  The South Carolina Supreme Court issued an Order on June 7, 2006, denying the certiorari petition. Petitioner only had 56 days of non-tolled time left in which to file his federal habeas petition. Petitioner filed this habeas petition on May 25, 2007, with a Houston v. Lack delivery date of May 18, 2007, based on the stamped date on the envelope. Thus, the time is well outside the limitations period.

In the case of Harris v. Hutchinson, 209 F.3d 325 (4th Cir. 2000),  the Fourth Circuit aggregated time periods to conclude that a federal habeas petition was time barred under 28 U.S.C. § 2244(d).  In Harris, the Fourth Circuit stated:

> Thus, for Harris, the one-year limitation period imposed by §2244(d) commenced on April 24, 1996.  Ten-and-one-half months later, on March 12, 1997, Harris filed his petition for state post-conviction review, which suspended the running of the one-year limitation period.  This petition remained "pending" in state courts until January

10

> 7, 1998, when the Maryland Court of Appeals denied Harris' application for leave to appeal the denial of his petition. At this point, the clock began running again on the one-year limitation period, expiring one-and-one-half months later, in February 1998. Harris did not file his federal habeas petition until July 22, 1998, six months after his one-year period had expired. Therefore, the petition was time-barred under 28 U.S.C. § 2244(d).

Harris, 209 F.3d at 327.

In his response in opposition to the motion for summary judgment, Petitioner asserts that his petition should not be dismissed on the limitations issue. Petitioner asserts that he received a letter from his PCR appeal counsel informing him that his writ of certiorari was denied on June 7, 2006, and that "he had one (1) year from that date to file his federal habeas corpus application." Petitioner attached a copy of the referenced letter signed by Deputy Chief Attorney Wanda H. Carter, to his response.

Respondent filed a reply to the response asserting that while his counsel's advice was erroneous, caselaw is clear that this does not entitle Petitioner to equitable tolling of the limitations period. Respondent cited several cases to support his decision including an order from the Honorable Patrick Michael Duffy, United States District Judge, in which he issued an order refusing to equitably toll the limitations period despite the very same erroneous advice from the very same appellate defender. Felder v. Faulkenberry, C.A. No. 4:06-1377-PMD-TER (D.S.C. filed 04/24/2007).

On August 27, 2007, Petitioner filed a motion for equitable tolling and Respondent filed a response to this motion on September 14, 2007. In his motion, Petitioner asserts he received Title 28 U.S.C. §2254 and §2244 from the McCormick Correctional Institution's law library upon request but that the copyright date is 1994 "which has no subsection dealing with the period of limitations"

11

and they do not have the supplements. Thus, Petitioner asserts the only information he had available was his lawyer's advice.

Respondent filed a response arguing that Petitioner's assertion is insufficient for equitable tolling. Respondent asserts that Petitioner's claim before this Court was not that he relied on the allegedly outdated law in the prison law library-it was only that he relied on the letter from his appellate defender telling him he had one year from the denial of the PCR petition for writ of certiorari to file his federal habeas corpus action. Respondent contends it was only after the State pointed out that this misadvice was insufficient for equitable tolling that he changed his contention to assert that the law library was insufficient for him to verify this misadvice. Respondent argues that Petitioner was on notice by his counsel's letter that there was a limitations period. However, Respondent argues that Petitioner has not asserted that he then attempted to verify or read the provisions or that he requested an updated copy of the AEDPA from prison officials but was denied. Respondent also cited several cases to support his position.

The undersigned concludes there is no evidence that warrants equitable tolling. In the case of <u>Rouse v. Lee</u>, 339 F.3d 238 (4th Cir. 2003), the Fourth Circuit held the following:

> Congress enacted AEDPA to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases ... and to further the principles of comity, finality, and federalism." *Woodford v. Garceau,* --- U.S. ----, 123 S.Ct. 1398, 1401, 155 L.Ed.2d 363 (2003) (internal citations and quotation marks omitted). Nevertheless, we have held that the AEDPA statute of limitations is subject to equitable tolling. *Harris v. Hutchinson,* 209 F.3d 325, 330 (4th Cir.2000). As we held in *Harris,* however, rarely will circumstances warrant equitable tolling:
>
>> [A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would

> loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where--due to circumstances external to the party's own conduct--it would be unconscionable to enforce the limitation period against the party and gross injustice would result.
>
> Id. Principles of equitable tolling do not extend to garden variety claims of excusable neglect. *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (equitable tolling did not apply where petitioner's lawyer was absent from the office when the EEOC notice was received, and petitioner filed within 30 days of the date he personally received notice). Equitable tolling "is appropriate when, but only when, 'extraordinary circumstances beyond [the petitioner's] control prevented him from complying with the statutory time limit.' " *Spencer v. Sutton,* 239 F.3d 626, 630 (4th Cir.2001) (quoting *Harris,* 209 F.3d at 330). Accordingly, under our existing "extraordinary circumstances" test, Rouse is only entitled to equitable tolling if he presents (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time.
>
> The district court held that although the 1-year AEDPA limitations period is subject to equitable tolling, a "mistake of counsel does not serve as a ground for equitable tolling" as a matter of law. (J.A. at 328.) The court held that the circumstance that prevented Rouse from filing on time, his former counsel's "slight miscalculation by relying on Fed.R.Civ.P. 6(e)," was not an extraordinary circumstance beyond Rouse's control, and thus, that equitable tolling did not apply. (J.A. at 327-31.) The district court also found that Rouse's health during the limitations period did not warrant equitable tolling because he was not in "any way incompetent for a substantial part of the [limitations period]." (J.A. at 331.)

Id. at 246-247.

In Harris v. Hutchinson, the Fourth Circuit held that a mistake by counsel regarding the calculation of the limitations period did not constitute an "extraordinary circumstance" external to Petitioner that would justify equitable tolling. Id. In the Felder case, 4:06-1377-PMD-TER, Judge Duffy held the following:

13

> . . . the court finds that Mrs. Carter's mistake in calculating the filing date does not present an extraordinary circumstance beyond Petitioner's control where "equity should step in to give [Petitioner] the benefit of his erroneous understanding . . . Likewise, it is also clear that a pro se prisoner's ignorance of the law is not a basis to invoke equitable tolling. <u>United States v. Sosa</u>, 364 F.3d at 512. Accordingly, the court finds that Petitioner is not entitled to equitable tolling.

Based on the above reasons, the undersigned finds that the petition is barred by the statute of limitations and Petitioner is not entitled to equitable tolling.

## VI.  CONCLUSION

As set out above, a review of the record indicates that the Petitioner's federal habeas corpus petition should be dismissed as it is barred by the statute of limitations. It is, therefore,

RECOMMENDED that Respondent's motion for summary judgment (document #14) be GRANTED in its ENTIRETY, and the petition be dismissed without an evidentiary hearing.

IT IS FURTHER RECOMMENDED that Petitioner's motion for equitable tolling (document #20) be DENIED.

Respectfully Submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

September 24, 2007
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**